UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRIAN R. ELLIS,

          Plaintiff,

v.

NURSE MCKINNEY, *et al.*,

          Defendants.

Case No. C16-336 RSM-BAT

**REPORT AND RECOMMENDATION**

In this 42 U.S.C. § 1983 civil-rights action, Plaintiff Brian R. Ellis alleges that his Eighth, Fourth, Sixth, and Fourteenth Amendment rights were violated while he was incarcerated at the Snohomish County Jail ("SCJ"). *See* Dkt. 7. Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. 45.

Defendants' summary judgment motion was originally noted for January 20, 2017. Dkt. 28. However, Mr. Ellis was never served with the motion because he had left his last known address and had not provided the Court or defendants with his new address. Dkt. 39; Dkt. 40. On February 24, 2017, Mr. Ellis provided a new address and requested a continuance for an unspecified period of time. Dkt. 42. The Court ordered defendants to re-serve and re-note their summary judgment motion. Dkt. 44.

Defendants' filed their present motion for summary judgment on March 16, 2017 and noted the motion for April 14, 2017. Dkt. 45. Mr. Ellis was served with the motion, summary

REPORT AND RECOMMENDATION - 1

judgment materials, and *Rand* notice at the address Mr. Ellis provided to the Court on February 24, 2017. The mail was not returned as undeliverable. Dkts. 55 and 56. Mr. Ellis has filed no response to the summary judgment motion.

## STATEMENT OF RELEVANT FACTS

**A.    Medical Care**

The SCJ is operated by the Snohomish County Sheriff's Bureau ("SCCB"). When Mr. Ellis was booked into the SCJ on August 10, 2015, he was medically evaluated and interviewed by a SCCB Medical Unit nurse. Dkt. 46, Declaration of Nikki Behner, Health Services Administrator for Snohomish County Corrections, at ¶ 8. During his initial medical evaluation, Mr. Ellis did not report any symptoms of degenerative disc disease, sciatica or any other symptoms suggesting that he needed treatment. He also denied that he was taking any prescription medication. *Id.*, ¶ 14. Because he reported recently injecting heroin, Mr. Ellis was placed in the medical unit to be monitored by medical staff where he remained until August 14, 2015. *Id.*, Behner Decl., at ¶ 15. During that time, his vitals were checked multiple times each day and he was offered ibuprofen and acetaminophen at regular intervals to help alleviate withdrawal symptoms. On several occasions, Mr. Ellis refused having his vitals taken and refused to cooperate with the nurses. *Id.*, ¶¶ 15, 16.

On August 28, 2015, Mr. Ellis submitted a kite to the medical unit stating that he had "been requesting [his] medication since booking to no avail….My back is killing me." *Id.*, Behner Decl., at Exhibit A. SCJ Licensed Nurse Practitioner ("LPN") Meader was aware that Mr. Ellis had submitted a kite asking for medication for his back, that his medical records had been requested from the Department of Corrections, and that the records had not yet been received. While she was in his unit dispensing medication, Ms. Meader asked to speak with Mr.

REPORT AND RECOMMENDATION - 2

Ellis to let him know the status of his request. Dkt. 50, Meader Decl., at ¶¶ 4-5. However, according to her declaration and documents submitted, Ms. Meader's interaction with Mr. Ellis occurred on August 23, 2015, which predates Mr. Ellis's kite by five days. The August 28, 2015 kite appears to be the only kite requesting medication that was submitted by Mr. Ellis, so it is unclear whether Ms. Meador was aware of a written kite or simply aware that Mr. Ellis had been requesting medication.

While Ms. Meader was trying to explain to Mr. Ellis that his records had not yet been received, Mr. Ellis became agitated, verbally threatened Ms. Meader, and used profanity towards her. Dkt. 50, Meader Decl., ¶ 8. Custody Deputy McKinney who was overseeing the conversation ordered Mr. Ellis to return to his cell and lock down. Mr. Ellis initially refused to return to his cell and continued with his verbal aggression and profanity. *Id.*, ¶ 9; Dkt. 49, Declaration of Megan McKinney, at ¶¶ 9-10. Based on his behavior, Mr. Ellis was infracted for refusing to lockdown, interfering with module operations, and using profanity and threats to staff. *Id.*, McKinney Decl., at ¶ 12 and Exhibit A. A hearing was conducted and Mr. Ellis was found guilty of the rule violations. *Id*. McKinney Decl., at ¶ 13 and Exhibit B.

LPN Meader has no authority to prescribe medications. She also cannot dispense medications, whether prescription or over the counter, without orders from a physician or ARNP. Dkt. 50, Meader Decl., at ¶ 3.

On September 1, 2015, ARNP Daniel Miller received and evaluated Mr. Ellis's medical records. Dkt. 46, Behner Decl., at ¶ 10. ARNP Miller denied Mr. Ellis's request for prescription medicine, stating, "Radiology report (x-rays) does not support need for medication for neuropathy/chronic pain." Dkt. 7-2, p. 15; Dkt. 46, Behner Decl., at ¶18, Exhibit A. Based on her review of Mr. Ellis's records, ARNP Behner concurs with ARNP Miller's conclusion that

prescription medication was not warranted. According to ARNP Behner, Mr. Ellis's medical records and x-ray images confirm that Mr. Ellis was diagnosed with sciatica and mild disc degeneration, neither of which require immediate pain medication and are not considered serious medical conditions. Dkt. 46, Behner Decl., at ¶ 13.

Before ARNP Miller responded to Mr. Ellis's kite, Mr. Ellis filed a grievance on August 31, 2015. He stated that he had "been in excruciating pain since [his] arrival at the jail" and that he had "D.D.D. in [his] lower back....." He stated that he had been upset about being denied his medication and was trying his best to deal with the pain. *Id*., Behner Decl., at ¶ 11 and Exhibit B. ARNP Debbie Bellinger responded to the kite on September 8, 2015, stating: "The ARNP reviewed your MRI and pain medications are not indicated." *Id.*, Behner Decl., at ¶ 12 and Exhibit B.

Mr. Ellis did not submit any additional kites or grievances related to medical care during the remainder of his incarceration at the SCJ. He was released on January 5, 2016. *Id.,* Behner Decl., at ¶ 13.

**B.    Legal Mail**

Mr. Ellis alleges that on October 12, 2015, Office Spatid (sic) delivered to him a piece of "legal mail" which had already been opened. Dkt. 7, at part 3. Mr. Ellis alleges that the mail contained his "discovery" but he does not describe the mail's sender, specific content, or the extent to which it was, or was not, marked as "legal mail." *See id.* Mr. Ellis does not allege that his mail was searched or read.

Custody Deputy Chad Spaetig was not on duty at the Snohomish County Jail on October 12, 2015. Dkt. 52, Declaration of Chad Spaetig, at ¶ 3. Custody Deputy Spaetig did not deliver mail to inmates on or around October 12, 2015 and specifically did not open or deliver any mail

to Mr. Ellis. *Id*, Spaetig Decl., at ¶ 4.

Mr. Ellis submitted a grievance about the opening of his "legal mail." Dkt. 48, Declaration of Sergeant Scott Lewis, at ¶ 13. Sergeant Lewis responded to the grievance in person and in writing. *Id.*, Lewis Decl., at ¶ 6. Sergeant Lewis noted that the envelope at issue did not have a return address, was not sent through U.S. mail, had not been opened with a letter opener as is normally used in the SCJ mailroom, and the envelope was not marked as "legal mail." *Id.*, Lewis Decl., at ¶¶ 7-11. Mr. Ellis told Sergeant Lewis that the attorney he fired may have dropped the envelope off for him and that it contained "discovery" for his criminal case. *Id.*, Lewis Decl., at ¶ 10. Although Sergeant Lewis did not ask to see the mail, Mr. Ellis showed the mail to him. *Id.*, Lewis Decl., at ¶ 7. Sergeant Lewis saw what appeared to be portions of police reports but no correspondence. *Id.*, Lewis Decl., at ¶ 11. Mr. Ellis did not identify or report that there were any confidential communications from his attorney in the materials. *Id*. Sergeant Lewis told Mr. Ellis that he would remind staff about prisoner mail procedures and he subsequently did so. *Id.*, Lewis Decl.; Exhibit B.

**C.  Retaliation**

Mr. Ellis alleges that he was moved to a housing unit with less recreational time because he filed a second grievance about his legal mail. On November 25, 2015, Classification Specialist George Shedrick changed Mr. Ellis's housing assignment from F2 to F4. Dkt. 51, Declaration of George Shedrick, at ¶ 8. Mr. Shedrick made the housing assignment change based on Custody Deputy Kathleen Seehom's report that Mr. Ellis was causing problems with the inmate module workers (inmates with work assignments) in F2. *Id.*, Shedrick Decl., at ¶ 9. Mr. Shedrick also had independent knowledge of Mr. Ellis's behavioral problems and that Mr. Ellis had been instigating problems with the module workers. Mr. Shedrick was concerned that

REPORT AND RECOMMENDATION - 5

Mr. Ellis's behavior would cause greater issues with security and safety in the module. *Id*. at ¶¶ 10-11.

Module F2 and F4 are both medium security housing modules. *Id*., Shedrick Decl., at ¶ 13. The F4 module allows custody staff to more closely monitor inmates because inmates spend half of their time in their cells and half of their time out of their cells interacting in the module. *Id.*, ¶ 13. Mr. Shedrick reassigned Mr. Ellis because he was concerned about inmate safety and jail security. Although it would have been appropriate, based on Mr. Ellis's behavior, to assign Mr. Ellis to a segregation module, in Mr. Shedrick's professional assessment, the move to the F4 module adequately addressed his safety concerns. *Id*., Shedrick Decl., at ¶ 15.

Captain Daniel Stites, who supervises the classification unit and records, reviewed the grievance database and found that Mr. Ellis filed only two grievances – on September 1, 2015 (medical treatment) and on October 22, 2015 (legal mail). Captain Stites is not aware of a second grievance related to the handling of Mr. Ellis's legal mail although it could have been handled by other custody staff. Mr. Ellis did not appeal Sgt. Lewis's response to his October 22, 2015 grievance. Dkt. 53, Stites Decl., ¶¶ 19-22.

SCJ Custody Deputies do not have the authority to make or change housing assignments. Those decisions are made by the Classification Unit and Classification Specialists. Dkt. 51, Shedrick Decl., ¶ 18; Dkt. 53, Stites Decl., ¶¶ 23-25.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact which would preclude judgment as a matter of law. Fed. R. Civ. P. 56(a). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present "specific facts showing

that there is a genuine issue for trial." *Celotex Corp. v Catrett*, 477 U.S. 317, 324 (1986). The non-moving party may not "rely merely on allegations or denials in its own pleadings." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co*., 68 F.3d 1216, 1221 (9th Cir. 1995). "Summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Id*.

Verified complaints and motions "may be treated as an affidavit to oppose summary judgment to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence." *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) (internal quotations omitted); *see also Johnson v. Meltzer*, 134 F.3d 1393, 1400 (9th Cir. 1998) ("Like a verified complaint, a verified motion functions as an affidavit."); *Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004); *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). But allegations that are based merely on the plaintiff's belief are insufficient to oppose summary judgment, as are unsupported conjecture and conclusory statements. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

**DISCUSSION**

To prevail on a Section 1983 claim, the plaintiff must establish (1) that he suffered a violation of a right protected by the Constitution, and that (2) the violation was proximately caused by a person acting under color of state law. *Crumpton v. Gates*, 847 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, the plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the

complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

**A.     Medical Care**

Mr. Ellis claims that "Nurse" McKinney and "Nurse" Meader violated his Eighth Amendment rights by interfering with his access to medication. (Ms. McKinney is a custody deputy and Ms. Meador is a licensed nurse practitioner). Dkt. 7, pp. 2-3.

The Eighth Amendment's prohibition against cruel and unusual punishment in the deliberate indifference to serious medical needs does not directly apply to pretrial detainees, but only applies after conviction and sentence. *See Graham v. Connor*, 490 U.S. 386, 392 n. 6 (1989). However, the Supreme Court has held that "[p]retrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). "Thus, while the Eighth Amendment proscribes cruel and unusual punishment for convicted inmates, the Due Process Clause of the Fourteenth Amendment proscribes any punishment of pretrial detainees." *Redman v. County of San Diego*, 942 F.2d 1435, 1441 n. 7 (9th Cir.1991). In light of these Supreme Court rulings, the Ninth Circuit has concluded that the 'deliberate indifference' standard applies to claims that correction facility officials failed to address the medical needs of pretrial detainees. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242–43 (9th Cir.2010); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir.1998). For these reasons, the Court construes plaintiff's deliberate indifference claims as Fourteenth Amendment due process claims, subject to Eighth Amendment standards.

To set forth a constitutional claim under the Eighth Amendment predicated upon the failure to provide medical treatment, the plaintiff must first show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury

REPORT AND RECOMMENDATION - 8

or the unnecessary and wanton infliction of pain.  Second, a plaintiff must show the defendant's response to the need was deliberately indifferent.  *Lemire v. California Dept. of Corrections and Rehabilitation*, 726 F.3d 1062, 2013 WL 4007558 (9th Cir.2013).  The "deliberate indifference" prong requires (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.2006).  Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials provide medical care.  *Jett*, 439 F.3d at 1096.  *See also Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994) (a prison official cannot be found liable unless the official knows of and disregards an excessive risk to inmate health or safety).

The indifference to a prisoner's medical needs must be substantial.  Mere indifference, negligence, or medical malpractice will not support this claim.  *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir.1980); *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976).  It is well established that differing opinions on medical treatment do not amount to a violation under the Eighth Amendment.  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.1996) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989)).  To prevail on an Eighth Amendment claim in these circumstances, a plaintiff must show "that the course of treatment the doctors chose was medically unacceptable under the circumstances ... and ... that they chose this course in conscious disregard of an excessive risk to plaintiff's health."  *Jackson*, 90 F.3d at 332.

Defendants argue that Mr. Ellis cannot prevail on his medical claim because he does not suffer from a serious medical condition.  There are three situations in which a medical need is serious: (1) "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"; (2) "the presence of a medical condition that significantly

affects an individual's daily activities"; or (3) "the existence of chronic and substantial pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

At the time of his initial evaluation, Mr. Ellis denied having any back pain and denied being on any prescription drugs. Mr. Ellis's medical records indicate that he has sciatica and mild disc degeneration. However, based on an evaluation of his medical records, history and x-ray images, SCCB medical treatment staff came to the conclusion that Mr. Ellis's complaints did not warrant prescription pain medication. *Id.*, Behner Decl., at ¶¶ 9-10, 13. SCCB medical staff further concluded that Mr. Ellis was not suffering from a serious medical condition. *Id.*, Behner Decl., at ¶ 13.

Even if Mr. Ellis was suffering from a serious medical condition, there is no evidence that Custody Deputy McKinney or LPN Meader intentionally denied, interfered with, or delayed Mr. Ellis's access to medical care. The evidence shows that LPN Meader was attempting to let Mr. Ellis know that his request for medication was being handled by the medical unit and Custody Deputy McKinney became involved only after Mr. Ellis exhibited threatening behavior. Neither of these individuals have authority to prescribe medications nor can LPN Meader dispense medications without prior physician or ARNP orders. Ultimately, it was ARNP Miller who denied Mr. Ellis's request for prescription medication and Mr. Ellis did not appeal or object to that denial.

Mr. Ellis's complaint is essentially that SCCB did not provide him with pain medication. This is not sufficient to state an Eighth Amendment cause of action. A difference of opinion between a prisoner-patient and prison medical authorities regarding what treatment is proper and necessary does not give rise to an Eighth Amendment claim. *Franklin v. Oregon*, 662 F.2d

1337, 1344 (9th Cir. 1981); *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970). Moreover, there is no evidence that denying prescription pain medications was medically unacceptable under the circumstances or that the denial was chosen in conscious disregard of an excessive risk to his health. Thus, defendants are entitled to summary judgment on Mr. Ellis's medical claim.

**B.      Legal Mail**

Mr. Ellis alleges that Captain Stites, Lt. Cane, Sgt. Lewis, and Corrections Officer Spaetig violated his constitutional rights when Officer Spaetig delivered an opened envelope containing legal mail to Mr. Ellis. Dkt. 7, pp. 3-4.

Mr. Ellis purports to bring this claim under the Fourth Amendment as an unlawful search of his legal mail. However, questions relating to an inmate's constitutional rights in the context of his mail is more appropriately analyzed under the First Amendment. Prisoners retain their First Amendment rights to the extent those rights are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Clement v. Cal. Dep't. of Corr.*, 364 F.3d 1148, 1151 (9th Cir. 2004) (per curiam). Among those rights generally retained is the right to send and receive mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). Restrictions on First Amendment rights are valid in the corrections context as long as the restriction is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

The inspection of prisoners' incoming and outgoing mail has long been among those reasonable limitations on prisoner mail. *See e.g. Wolff v. McDonnell*, 418 U.S. 539 (1974); *Sherman v. MacDougall*, 656 F.2d 527 (9th Cir. 1981). Prisoners' interest in attorney communications is greater, and generally, such letters should likely not be opened and read

outside the presence of the prisoner. *See Wolff*, 418 U.S. at 576-77. This special consideration for "legal mail" applies only to direct communications between the prisoner and his attorney. *See Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998) ("Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail."); *also O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996) (Grievances being sent to various state officials and agencies are not "legal mail" subject to protection); *Mann v. Adams*, 846 F.2d 589, 590-91 (9th Cir. 1988) (Staff opening mail from public agencies, public officials, civil rights groups and media outside the presence of prisoners did not violate Constitutional rights). Additionally, correctional facilities may require correspondence between prisoners and their counsel to be appropriately marked and for counsel to identify themselves to the facility prior to mailing privileged communication. *Wolff*, 418 U.S. at 576-577.

In addition, an isolated instance or occasional opening of a prisoner's legal mail, outside of his presence, does not violate the Constitution. *See Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir.1989) (guard's opening of legal mail outside of inmate's presence was, at most, negligence, and did not reach the level of intent necessary for constitutional violation); *Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993); *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (single instance of opening incoming legal mail does not support a constitutional claim); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (Requiring "evidence of improper motive or resulting interference with [Plaintiff's] right to counsel or to access to the courts" to turn incident of opening inmate legal mail into an actionable constitutional violation.).

Here, the envelope was not clearly identifiable as legal mail. The contents of the mail was described as "discovery" for Mr. Ellis's criminal case that may have been dropped off by his former attorney. The envelope appeared to contain copies of police reports. The envelope was

not marked "legal mail", it contained no return address, and it was not stamped or sent through the U.S. mails. The envelope also did not appear to have been processed through the jail's mailroom. Dkt. 48, Lewis Decl., at ¶¶ 7-11. Even assuming the envelope contained "legal mail," Mr. Ellis's complaint fails as the opening of a single envelope does not rise to a violation of Mr. Ellis's First Amendment right to receive mail.

There is also no evidence that Mr. Ellis's Sixth Amendment right to communicate with his counsel was violated as there is no allegation that the contents of the envelope were read. *See, e.g., Nordstrom v. Ryan*, 762 F.3d 903, 909-11 (9th Cir. 2014) ("while inmate's written communications with their criminal defense attorneys may be inspected or scanned, they may not be read, as such practice would be 'highly likely' to chill inmates' Sixth Amendment rights.")

Finally, Mr. Ellis has failed to identify a sufficient factual basis to support his claims against the individual defendants Stites, Cane, Lewis, and Spaetig.

Custody Deputy Spaetig was not on duty on October 12, 2015 and was not involved with inmate mail for the time that Mr. Ellis was at the SCJ. Dkt. 52, at ¶ 4. Major Kane and Captain Stites did not receive, review or address any grievances filed by Mr. Ellis and had no direct contact or involvement in his incarceration independent of their supervisory roles as commander and chief of the jail. Dkt. 47, Kane Decl., at ¶¶ 12-14; Dkt. 53, Stites Decl., at ¶¶ 34-36. A defendant cannot be held liable under 42 U.S.C. §1983 solely on the basis of supervisory responsibility or position but must have personally participated in the acts alleged. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694 n.58 (1978); *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982).

Sgt. Lewis responded to Mr. Ellis's grievance in person and in writing. Dkt. 48, Lewis Decl., at ¶¶ 6-12; Exhibit B. Although Sgt. Lewis did not believe that the envelope contained

"legal mail" or that it was improperly handled, searched or read by SCCB staff (based on the type of envelope, lack of identification as legal mail, lack of postage or markings of mailing, and lack of any correspondence), he advised Mr. Ellis that he would remind staff of policies and procedures related to handling inmate mail and Mr. Ellis appeared satisfied with this response. Moreover, denial of a grievance related to a constitutional violation is not itself a constitutional violation. *See George v. Smith*, 507 F.3d 605, 609–610 (7th Cir.2007). Here, the evidence shows that Sgt. Lewis addressed the concerns raised by Mr. Ellis in his grievance. There is no evidence that Sgt. Lewis personally deprived Mr. Ellis of a constitutional right.

For all these reasons, defendants are entitled to summary judgment on Mr. Ellis's legal mail claim.

**C.     Retaliation**

Mr. Ellis alleges that on November 25, 2015, he filed a "follow-up" grievance and on the same day Corrections Officer Deputy Seamoore removed him from a "Full Rec to a Half Rec without incident or infraction." Dkt. 7, pp. 4-5.

A plaintiff can establish that his First Amendment rights have been adversely affected by retaliatory conduct only when the plaintiff shows: (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of plaintiff's constitutional rights. *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1300–01 (9th Cir.1999). Challenges to institutional restrictions that are asserted to inhibit First Amendment interests must also be analyzed in terms of the legitimate policies and goals of the corrections system. *Pell v. Procunier*, 417 U.S. 817 (1974). A plaintiff

must also show that "his protected conduct was the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim*, 584 F.3d at 1271(quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir.1989)). The burden then shifts to the defendant to show "by a preponderance of the evidence that [he] would have" taken the same action "even in the absence of the protected conduct." *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Soranno's Gasco*, 874 F.2d at 1314.

Mr. Ellis fails to show that his First Amendment rights have been adversely affected by retaliatory conduct. First, the summary judgment evidence shows that Mr. Ellis filed only two grievances – on September 1, 2015 (medical treatment) and on October 22, 2015 (legal mail) and he did not appeal the response to his October 22, 2015 grievance. Dkt. 53, Stites Decl., ¶¶ 19-22. Second, and assuming that he did file a second grievance on November 25, 2015, Classification Specialist George Shedrick was not aware of its existence. Mr. Shedrick was responsible for transferring Mr. Ellis to module F4 after Mr. Ellis's behavior raised security and safety concerns, and Mr. Shedrick had no knowledge of any grievances filed by Mr. Ellis. Dkt. 51, Shedrick Decl., ¶¶ 8, 17. Therefore, there is no basis to conclude that Mr. Ellis's grievance was the motivating factor behind Mr. Shedrick's decision to move Mr. Ellis to a different module.

In an earlier filing, Mr. Ellis maintained that a female custody officer known as "C/O Seamoore" was responsible for removing him from module F2 to F4. Dkt. 20. According to Classification Specialist Shedrick and Captain Stites, custody deputies have no authority to change housing assignments. Dkt. 51, Shedrick Decl., at ¶ 18; Dkt. 53, Stites Decl., at ¶ 25. Also, according to defendants' counsel, Snohomish County employee records do not show that an Officer Seamoore is or was employed by Snohomish County during the time of Mr. Ellis's incarceration and therefore, counsel was unable to obtain and file a waiver of service on behalf

of this defendant. See Dkt. 16. Mr. Ellis initially disputed this but he has provided no evidence to the contrary although he was given an opportunity to seek further information about the person who changed his housing assignment through discovery. Dkt. 20. As Defendant Seamoore was never served in this case, she may be dismissed for lack of jurisdiction.

Accordingly, defendants are entitled to summary judgment on Mr. Ellis's retaliation claim.

**D.     Qualified Immunity**

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *see also Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). If the allegations make out a constitutional violation, the court must also determine whether the right alleged to have been violated was "clearly established." *Saucier*, 533 U.S. at 201.

A district court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson*, 555 U.S. at 231-32. The court may grant defendants qualified immunity at any point the court answers either prong of the inquiry in the negative. *See e.g.*, *Tibbetts v. Kulongoski*, 567 F.3d 529, 536-39 (9th Cir. 2009) (bypassed the first prong and granted defendants qualified immunity because plaintiff's due process right was not clearly established at the time of alleged violation).

The undersigned concludes that Mr. Ellis's allegations, even if true, do not establish a constitutional violation. Therefore, plaintiffs are entitled to qualified immunity.

## CONCLUSION

The Court recommends that Defendants' motion for summary judgment (Dkt. 31) be **GRANTED** and all claims against them **dismissed with prejudice.**

Any objections to this Recommendation must be filed and served upon all parties no later than **Wednesday, May 31, 2017.** The Clerk should note the matter for **Friday, June 2, 2017**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed twelve (12) pages. The failure to timely object may affect the right to appeal.

DATED this 10th day of May, 2017.

BRIAN A. TSUCHIDA
United States Magistrate Judge